IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAVID DREAMS PLAINTIFF

V. NO. 15-2024

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, David Dreams, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I. Procedural Background:**

Plaintiff filed his current applications for DIB and SSI on April 3, 2013, alleging an inability to work since December 14, 2011,[1] due to Type 2 diabetes, high blood pressure, depression, arthritis, vision problems, and fatigue. (Tr. 260-272, 305, 312). An administrative

[1] At the hearing held before the ALJ, Plaintiff's counsel moved to amend the onset date to January 12, 2013 (the day following the denial from the last hearing. (Tr. 94).

hearing was held on April 15, 2014, at which Plaintiff appeared with counsel and testified. (Tr. 25-51).

By written decision dated August 15, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – hypertension, non-insulin dependent diabetes mellitus, osteoarthritis, and major depression. (Tr. 21). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 22). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §404.1567(b) and 416.967(b), except he is limited to work consisting of simple tasks with simple instructions. (Tr. 23). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not be able to perform his past relevant work, but there were other jobs Plaintiff would be able to perform, such as blending tank tender, inspector/checker, and warehouse checker. (Tr. 30).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional evidence and denied that request on December 3, 2014. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520; 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520; 416.920.

**III. Discussion:**

Plaintiff argues that the ALJ erred in his RFC assessment because: the ALJ's mental RFC assessment is not supported by substantial evidence in light of new medical evidence properly submitted after the hearing; because the ALJ erred in failing to consider Plaintiff's need for the use of a cane; and because the ALJ erred in finding Plaintiff could perform a full range of light work. (Doc. 11).

**A. Credibility Analysis:**

In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 25). The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3)

precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See id. While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ noted that Plaintiff was able to take care of all activities of daily living, except as limited by pain, he was able to drive, take care of his personal needs, shop for groceries, cook, wash his clothes, and attend church. (Tr. 22). The Court also notes that during the relevant time period, on April 2, 2014, Plaintiff advised Clark Williams, PHD, LPC, of Western Arkansas Counseling and Guidance Center (WACGC), that he had been out of town taking care of his mother after her surgery. (Tr. 800). On June 5, 2014, Plaintiff advised Mr. Williams that he wanted to go to visit his mother again for a couple of weeks, because she was helping take care of her grandchildren and he wanted to go help her out for a while. (Tr. 803). This type of activity is inconsistent with allegations of disabling impairments. It is also noteworthy that Plaintiff continued to smoke cigarettes and marijuana during the relevant time period. (Tr. 107, 692, 767, 841, 845). It was reported on August 19, 2014, that the last time Plaintiff used marijuana was July 4. In a report dated August 22, 2014, from Valley Behavioral Health System, it was reported that Plaintiff's urine drug screen was positive for THC. (Tr. 841). The Court also notes that on September 17, 2013, James Gattis, APN, of WACGC, explained to Plaintiff that he did not feel Plaintiff was experiencing psychosis and did not need to be taking Haldol, and Plaintiff responded that he

was trying to get disability and was concerned that not taking Haldol would impair his ability to obtain disability. (Tr. 662). This also impacts Plaintiff's credibility.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility analysis.

**B. RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

With respect to weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be

supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014). The opinions of the treating physicians must also be supported by the record as a whole. See Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2004). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Andrews, 771 F.3d at 1102. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id.

**1. Mental RFC Assessment:**

Plaintiff argues that in formulating Plaintiff's RFC assessment, the ALJ relied heavily on an August 2012 Mental Diagnostic Evaluation performed by Dr. Robert Spray, but that his evaluation was inconsistent with subsequent treatments and medical records related to Plaintiff's impairments.

On August 13, 2012, Dr. Spray evaluated Plaintiff, and indicated that Plaintiff reported situational depression from a lost relationship earlier that year. (Tr. 431). Plaintiff also reported that he had a few sessions at WACGC and was given Lexapro, which did not help. (Tr. 431). He advised he had to stop treatment there because he could not afford the co-pay. (Tr. 431). His last psychiatric medication was Celexa and Trazodone, which he said he could not afford. Dr. Spray diagnosed Plaintiff with adjustment disorder with depressed and anxious mood, and gave him a GAF score of 55 to 65. (Tr. 433). Dr. Spray reported that Plaintiff did his own shopping and managed his money, attended choir practice and church,

did his own housekeeping, prepared his own meals, and did his laundry. (Tr. 433). Dr. Spray further reported that Plaintiff had mild difficulty with attention and concentration. (Tr. 434).

Plaintiff was treated at Good Samaritan Clinic on June 6, 2013, diagnosed with depression, and was taking Celexa. (Tr. 506). In a Disability Determination Explanation, dated July 3, 2013, non-examining consultant, Sheri L. Simon, Ph.D., opined in a Psychiatric Review Technique report that there was no evidence of a severe mental impairment. (Tr. 151).

On August 14, 2013, Plaintiff presented to WACGC and Sparks Regional Medical Center, complaining of behavioral problems. (Tr. 663, 744). Plaintiff was transferred to Vista Health on August 15, 2013, and on August 19, 2013, was discharged with the following diagnosis:

| | |
|---|---|
| Axis I: | Depressive disorder nos |
| Axis II: | Cluster B traits |
| Axis III: | Diabetes<br>Hypertension |
| Axis IV: | Primary; Financial Occupation; Social, Medical |
| Axis V: | GAF on admission – 18; on discharge – 40 |

(Tr. 691). It was reported at that time that Plaintiff smoked marijuana. (Tr. 692). It was also reported that Plaintiff's diabetes was fairly controlled; his hyperlipidemia was stable on pravastatin; his joint pain was fairly controlled with meloxicam; his blood sugar was improving; and there were no side effects from medication. (Tr. 695). Plaintiff's prognosis was reported as good, and continued recovery depended on his compliance to the prescribed medication regimen, compliance to the prescribed psychotherapeutic treatment modalities, and keeping all follow up appointments as ordered. (Tr. 696).

In a Disability Determination Explanation (Reconsideration) dated August 22, 2013, Diane Kogut, Ph.D., reported there was no evidence of a severe mental impairment. (Tr. 178).

Plaintiff was again seen at WACGC on August 23, 2013, and was given a GAF score of 50 (Tr. 657). On September 17, 2013, Plaintiff was seen by James Gattis, APN, at WACGC, and was referred by Vista Health after his recent inpatient stay. (Tr. 659). At that time, Plaintiff was taking Haldol, and reported that he smoked one pack of cigarettes every two or three days. (Tr. 659). Mr. Gattis reported that the evaluation did not reveal any cognitive deficits, and discontinued Haldol. (Tr. 661-662). Plaintiff asked Mr. Gattis if he could refill his pain medication, and became somewhat upset when Mr. Gattis explained that he could not prescribe any medications. (Tr. 662). When Plaintiff saw Mr. Gattis again on October 2, 2013, it was reported that Plaintiff was not taking any medications at all. (Tr. 666). A December 20, 2013 report from WACGC indicated that Plaintiff was then taking medication as prescribed. (Tr. 667).

Plaintiff again saw Mr. Gattis on March 26, 2014. (Tr. 669). Plaintiff was upset that while he was out of town to be with his mother following her surgery, his family members used his house to have parties, and he stated he was doing well prior to these events. (Tr. 669). It was also reported that his medication was effective for targeted symptoms. (Tr. 669).

On April 23, 2014, Plaintiff met with Mr. Williams, of WACGC, and was angry that he lost his disability case. (Tr. 805). It was reported that most of Plaintiff's complaints appeared to be directly linked to the disability case and were felt to be non-pharmacological in nature. (Tr.805). On May 7, 2014, when Plaintiff met with Mr. Williams again, Plaintiff was reported as doing better, was sleeping better, his appetite was good and energy and

motivation were improving. (Tr. 807). On June 5, 2014, Plaintiff advised Mr. Williams that he wanted to go visit his mother again for a couple of weeks to help her take care of her grandchildren. (Tr. 803). On June 18, 2014, Plaintiff reported that he had had a couple of "down days" but otherwise, he had no complaints. (Tr. 810).

Plaintiff was admitted to Valley Behavioral Health System on August 19, 2014, as a referral from WACGC. (Tr. 843). Plaintiff was discharged on August 22, 2014, with a diagnosis of depressive disorder nos, and it was reported that his GAF score on admission was 18, and upon discharge was 40. (Tr. 838). By the time of discharge, Plaintiff reported an improved mood and that he was safe to go home. It was reported that over the course of hospitalization, there was a significant decline in all symptoms present at the time of admission, to the point that by the date of discharge, Plaintiff convincingly denied any thoughts of harm to himself or others. (Tr. 840). The discharge summary also indicates that "[a]lthough patient is not an acute safety risk, there remains a considerable moderate chronic risk for suicide and violence given the patient's overall history." On the date of discharge, the patient was listing multiple future oriented statements, listing sound barriers to thoughts of harming self or others, and voicing a very reasonable safety plan, including calling 911 or presenting to the ER for any concerning symptoms including harming self or others. (Tr.840). It was also reported that Plaintiff's urine drug screen was positive for THC. (Tr. 841).

With respect to the time Plaintiff spent at Valley Behavioral Health System in August of 2014, the Appeals Council considered the additional evidence. (Tr. 5-6). When the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Commissioner. The Court then has no

jurisdiction to review the Appeals Council's action because it is a nonfinal agency action. See Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992). At this point, the Court's task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence made part of the record by the Appeals Council that was not before the ALJ. As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing court." Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994). However, once it is clear that the Appeals Council considered the new evidence, then we must factor in the evidence and determine whether the ALJ's decision is still supported by substantial evidence. This requires the Court to speculate on how the ALJ would have weighed the newly submitted evidence had it been available at the initial hearing. Flynn v. Chater, 107 F.3d 617, 621 (8th Cir.1997). Thus, the Court has endeavored to perform this function with respect to the newly submitted evidence.

In his decision, the ALJ discussed Dr. Spray's evaluation in detail, noting that he reported situational depression, and diagnosed him with an adjustment disorder with depressed and anxious mood. (Tr. 26). He also referenced Dr. Spray's Medical Source Statement, wherein he reported Plaintiff would have no problem dealing with simple tasks and instructions, and would have only mild difficulty with complex tasks and instructions, secondary to anxiety and depressed mood. (Tr. 26). The ALJ gave Dr. Spray's assessment significant weight, and found Plaintiff capable of unskilled work. (Tr. 26). The ALJ also discussed Plaintiff's time spent at Vista Health, noting that his mental condition improved with medication adjustment and counseling. (Tr. 28). The ALJ discussed Plaintiff's treatment at WACGC (Tr. 28), as well as the various GAF scores given to Plaintiff. (Tr. 29). He gave the opinions of the state agency medical consultants, who provided assessments at the initial

and reconsideration levels little weight, finding Plaintiff was more limited physically and mentally than determined by the state agency consultant. (Tr. 29). The ALJ concluded that Plaintiff's depression appeared to be improved with medication, and that a recent note from WACGC indicated that his mood disorder might also be helped by individual therapy to assist him in handling situational stresses. (Tr. 29).

The Court finds that the records of Plaintiff's treatment of his mental impairments support the weight the ALJ gave to Dr. Spray's opinion, and his finding that Plaintiff could perform unskilled work. The records indicate that Plaintiff's depression was situational, and that Plaintiff was partially motivated by his desire to obtain disability benefits in seeking stronger drugs. See Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)(plaintiff's encounters with doctors appeared to be linked primarily to quest to obtain benefits, rather than to obtain medical treatment). In addition, the records reveal that as long as Plaintiff was medication compliant, his mental impairments improved.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC finding relating to Plaintiff's mental impairments.

**2. Plaintiff's Use of Cane:**

Plaintiff argues that the ALJ committed reversible error in finding the medical evidence of record and Dr. Rhomberg's examination of Plaintiff did not support Plaintiff's use of a cane.

On April 16, 2013, Dr. Edward W. Rhomberg, of Sparks Orthopedic Clinic, examined Plaintiff, who was complaining of left hip pain. (Tr. 792). Plaintiff complained that the pain was in the buttock area, and radiated into the groin. (Tr. 792). Plaintiff also complained of some numbness down to the lower extremity, in the supine position, though he

had a negative straight leg raise. The Stinchfield test was positive, and it was reported that Plaintiff had loss of internal rotation, and pain with passive internal rotation of the hip. (Tr. 792). Radiographs were reviewed and demonstrated some moderate degenerative change. (Tr. 792). Dr. Rhomberg assessed Plaintiff with degenerative joint disease, left hip. (Tr. 793). Dr. Rhomberg reported that he would start Plaintiff on some glucosamine and would have him continue with meloxicam that he was medicating with, would see him for follow-up in three months, and advised him to begin ambulating with the use of a cane. (Tr. 793). X-rays of Plaintiff's left hip revealed no fracture, dislocation or destructive osseous process. (Tr. 794).

Plaintiff saw Dr. Rhomberg again on August 4, 2014, complaining of pain over the posterolateral buttock associated with popping and snapping. (Tr. 831). Plaintiff was tender to palpate over the trochanteric bursa, and Dr. Rhomberg suspected the primary problem was not degenerative joint disease but popping or snapping hip causing irritation of the trochanteric bursa. (Tr. 831). A MRI of Plaintiff's hip was unremarkable. (Tr. 833). No mention was made of the use of a cane at this visit.

The Court notes that Plaintiff had full range of motion of his extremities on August 14, 2013. (Tr. 761). Furthermore, at the hearing held in April of 2014, no mention was made of Plaintiff's use of a cane. In fact, Plaintiff testified that for exercise, he lived down the street from a park, and walked at the park. (Tr. 107). He indicated he could walk about 40 yards before having to stop, and made no mention of having to walk with a cane. In addition, Plaintiff's counsel did not question the VE at the hearing about whether the use of a cane would impact Plaintiff's ability to work.

The Eighth Circuit has repeatedly held that "[a] treating physician's opinion 'should be granted controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" Nowling v. Colvin, No.14-2170, 2016 WL 690821 at *9 (8th Cir. Feb. 22, 2016)(quoting Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015) and Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000)). An ALJ may discount or disregard a treating physician's opinion, where "other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001)(quoting Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000).

In this case, the ALJ addressed Dr. Rhomberg's recommendation for the use of the cane as follows:

> X-rays of the left hip revealed no fracture, dislocation, or destructive osseous process. However, Dr. Rhomberg noted some moderate degenerative change, and diagnosed him with degenerative joint disease of the left hip. He was to continue Meloxicam, start on glucosamine, and use a cane for ambulation (Exhibit B25F). The undersigned does not find that the objective medical evidence of record, including Dr. Rhomberg's examination of the claimant, supports the need for use of a cane.

(Tr. 29).

The Court finds that based upon the record as a whole, there is substantial evidence to support the lack of weight the ALJ gave Dr. Rhomberg's direction that Plaintiff use a cane to ambulate, because the underlying medical evidence does not support such opinion. In addition, there is no indication that Plaintiff continued to use a cane after Dr. Rhomberg's direction, and Plaintiff's activities thereafter are not consistent with his contention that he requires a cane to ambulate.

**3. Ability to Perform Full Range of Light Work:**

Plaintiff argues that there is not substantial evidence to support the ALJ's conclusion that Plaintiff can perform a full range of light work. He also argues that the ALJ failed to explain in any detail why he did not credit Dr. Rhomberg's opinion that Plaintiff should use a cane to ambulate or seek testimony from the VE on the impact Plaintiff's use of a cane would have on his ability to perform light work. The Court disagrees. As indicated earlier, after the ALJ discussed all of the objective medical evidence, including x-rays, MRI's and other medical records, he concluded that the objective medical evidence of record, including Dr. Rhomberg's examination of the Plaintiff, did not support the need for use of a cane. There was no mention of the use of a cane by Dr. Rhomberg at his next examination, and although Plaintiff's attorney asked the VE additional questions at the hearing, and had the opportunity to inquire about the use of the cane, he failed to do so. Accordingly, after thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical questions the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Therefore, the Court finds that the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing a full range of light work, which would include such jobs as blending tank tender, inspector/checker, and warehouse checker. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV. Conclusion**:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 1st day of June, 2016.

/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE